IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF COLUMBIA

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Ronald D. Williams, being first duly sworn, depose and state as follows:

**Introduction**

1. I am a Special Agent with the United States Internal Revenue Service, Criminal Investigation ("IRS-CI), and I have been employed by the IRS-CI since February 22, 2003. As an IRS Special Agent, I am responsible for investigating possible violations of federal tax and criminal law, including violations of Titles 18, 26 and 31 of the U.S. Code. I have conducted numerous prior and ongoing investigations into violations of such federal crimes as the Money Laundering Control Act (Title 18), the internal revenue laws (Title 26), the Bank Secrecy Act (Title 31) and similar financial and non-financial offenses. I have participated in complex interstate criminal investigations with agents and detectives from the Federal Bureau of Investigation, the Department of Homeland Security, the Virginia State Police, the Arlington County Police and the Northern Virginia High Intensity Drug Trafficking Area (HIDTA) Task Force. I have received more than twenty (20) hours of training in federal search and seizure procedures and have participated in the preparation and execution of numerous search warrants.

2. The information contained in this Affidavit is based on my personal knowledge, the review of documents, and observations made by me during the course of this investigation, as well as, information conveyed to me by other individuals, including information obtained from a Special Agent with the Federal Bureau of Investigation, an investigator with the Enforcement & Investigation Bureau of the District of Columbia's Department of Insurance, Securities & Banking, the Arlington County Police Department, and the Virginia State Police.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a seizure warrant, this Affidavit does not set forth each and every fact learned by me or observed by me during the course of this investigation.

4. This Affidavit is made in support of an investigation concerning federal offenses, including, but not limited to, violations of Title 18 of the United States Code, including wire fraud in violation of 18 U.S.C. § 1343, and money laundering in violation of 18 U.S.C. §§ 1956 and 1957.

5. Based on the investigation detailed in this Affidavit, I believe probable cause exists to conclude that the Mercedes Benz referenced above is the proceeds of criminal activity by Mr. MCKINNEY, that is, a fraudulent scheme to obtain monies by forging deeds for real properties in the District of Columbia. I am submitting this Affidavit in support of an application for a seizure warrant pursuant to 18 U.S.C. § 981 for the Mercedes Benz referenced above and described as a Black 2000, 4-Door Mercedes-Benz S430 Sedan, VIN number WDBNG70J4YA046776.

## Summary of Probable Cause

6. On June 10, 2005, an Arlington County Police officer approached a car driven by Duane McKinney, a Maryland resident, ("Mr. MCKINNEY") stopped near the intersection of Route 50 and Washington Boulevard in Arlington County, VA. The car, a 2002 Black 745LI 4-Door BMW, was pulled over along the shoulder of the road. When the officer asked the apparent driver for his identification, Mr. MCKINNEY produced a Maryland driver's license indicating that he resided at 266 Harry S. Truman Drive, Upper Marlboro, Maryland.

7. During the officer's encounter with Mr. MCKINNEY, the officer checked for any outstanding warrants in Mr. MCKINNEY's name. The officer learned that Mr. MCKINNEY had

a valid outstanding Failure to Appear warrant for a criminal case involving an assault and battery charge in Arlington County, VA. The officer arrested Mr. MCKINNEY on the outstanding warrant and advised Mr. MCKINNEY of his rights.

8. After Mr. MCKINNEY was arrested, there was no adult with a valid driver's license with Mr. MCKINNEY to remove the BMW from its location along the road in Arlington, Virginia. Therefore, in order to move the vehicle from its location, the Arlington County Police Department took custody of the car. Thereafter, officers conducted an inventory search of the vehicle.

9. During the inventory search of the vehicle, officers discovered a duffle bag containing $159,040 in cash. After the currency was discovered, Mr. MCKINNEY engaged in a discussion with Arlington County Police officers. During that discussion, officers asked Mr. MCKINNEY about the origin of the $159,040.00 found in the trunk of the BMW. Mr. MCKINNEY stated that he was a real estate investor. He indicated that he was President and founder of a non-profit organization called "The Brotherhood of Men, Incorporated," located in Washington, D.C., has been in existence for ten years. (Mr. MCKINNEY also indicated that he was a television producer for DCTV.) Mr. MCKINNEY stated that he had withdrawn the $159,040.00 from the Bank of America in Washington, D.C., in incremental stages during the year.

10. Mr. MCKINNEY stated that one of the purposes of the "Brotherhood of Men, Inc." is to "quitclaim" property and to buy properties. Mr. MCKINNEY explained that he had cash in his BMW automobile to pay individuals who wanted to sell their real property to him.

11. Mr. MCKINNEY further told the Arlington Police that he was in Arlington, Virginia that day on his way to purchase two 16-passenger vans for Greenleaf Gardens Community Center in southwest Washington, D.C. Mr. MCKINNEY stated that Brotherhood of Men, Inc., hires

youth and provides them with on-the-job training. He explained that the large sum of cash found in his BMW was also intended to be used to pay his young employees a stipend. Mr. MCKINNEY stated that he always carries large sums of cash and that it was not uncommon for him to have that amount in his possession. Mr. MCKINNEY said that he normally carries $25,000 – $200,000 in cash, and that he stores the cash in the trunk of his vehicle.

12. Mr. MCKINNEY said that he purchased the 2002 Black BMW from Best Auto Sales in Arlington, Virginia for the purchase price of $47,000. He said that he purchased the BMW using a cashier's check and cash withdrawn from the Bank of America Account referenced above – which he referred to as an account in the name of the Brotherhood of Men, Inc., (an alleged 501(C)(3) non-profit entity).

13. Following the arrest of Mr. MCKINNEY, the Arlington County Police Department retained the BMW, $159,040.00 in cash found in the duffle bag in the car, and a HP laptop computer, serial number CNF4370JK2, found in the BMW.

14. After Mr. MCKINNEY's arrest, I conducted an investigation with members of the HIDTA Northern Virginia Money Laundering task force to trace the origins of the $159,040.00 in cash.

15. During the investigation, I learned that Mr. MCKINNEY is or was involved in a number of lawsuits in D.C. Superior Court involving contests over the true ownership of real property. I and other investigators obtained a list of properties at issue in these court cases, and we decided to interview witnesses and otherwise investigate the transfer and ownership of these properties.

16. During the investigation, I researched deeds at the District of Columbia's Recorder of Deeds Office. A search in that office for properties that were either deeded to or deeded from

Mr. MCKINNEY or the Brotherhood of Men, Inc., produced a list of several properties. From the list, I chose the following property transaction histories to trace: (1) 4265 Edson Place, N.E., Washington, D.C., deeded to Carson Ruffner ("Edson Place property"); (2) 5021 Hanna Place, N.E., Washington, D.C., deeded to John Albert and Leona Marsh Harrington ("Hanna Place property"); and (3) 1927 3rd Street, N.E., Washington, D.C., deeded to Ronald Washington ("3rd Street property").

Edson Place Transactions

17. I then conducted an investigation into the ownership and any sales of the real property in the District of Columbia located at 4265 Edson Place, N.E., Washington, D.C. The investigation revealed that on July 21, 2004, a deed was filed in the D.C. Recorder of Deeds office indicating that an individual named Carson Ruffner had transferred ownership of the Edson Place property to the Brotherhood of Men, Inc. However, law enforcement agents interviewed Mr. Ruffner in Falls Church, Virginia concerning the true ownership the Edson Place property. Mr. Ruffner was shown a copy of the July 22, 2004 deed in which he purportedly conveyed the Edson Place property to the Brotherhood of Men, Inc. The deed purportedly contained Mr. Ruffner's signature. However, Mr. Ruffner indicated that the July 24, 2004 deed was a forgery, that he had not signed the deed, and that, he had never before seen the deed.

18. Further investigation revealed that, on August 12, 2004, the Brotherhood of Men, Inc., had conveyed its interest in the Edson Place property to Qiyao Yuan and Vivian Kwok, through a deed signed by Mr. MCKINNEY.

19. According to a Bank of America account statement recovered from Mr. MCKINNEY's BMW during the inventory search, on August 13, 2004 a $40,000 deposit was made into Bank of America account number XXXXXXXX7468, which account is held in the

name of the Brotherhood of Men, Inc. The only deposit made during that statement period was $40,000. (It can therefore be inferred that Qiyao Yuan and Vivian Kwok purchased the Edson Place property from Mr. MCKINNEY by paying him $40,000.)

20. The true owner of the Edson Place property, Mr. Ruffner, indicated to the law enforcement agents that he had never heard of the Brotherhood of Men, Inc. Mr. Ruffner stated that he was aware of a Duane McKinney, but has no knowledge of him. Mr. Ruffner stated that he has no knowledge of Vivian Kwok or Qiyao Yuan (also known as "Charlie"). Mr. Ruffner did say that he knows a Charlie, but he indicated that he does not know whether the Charlie he knows is the same person also known as Qiyao Yuan.

Hanna Place Transactions

21. I also conducted an investigation into the ownership of the Hanna Place property. This investigation revealed that on February 16, 2005, a deed was recorded at the District of Columbia's Recorder of Deeds office conveying the Hanna Place property from John A. and Leona M. Harrington to The Brotherhood of Men, Inc. The deed was notarized by Joe D. Liles, Sr., on February 16, 2005. A review of the recorded deed shows that it was returned to "DUANE MCKINNEY, 266 HARRY S TRUMAN DR., LARGO, MD 20774."

22. Further investigation by me and other law enforcement agents – including a review of Social Security records and an interview of a Hanna Place property neighbor – revealed that the alleged conveyors of the Hanna Place property were dead on the date they allegedly signed the deed (February 10, 2005) conveying ownership of the property to the Brotherhood of Men, Inc.

23. Further investigation revealed that on April 23, 2005, The Brotherhood of Men, Inc., conveyed the Hanna Place property to an individual named Chen Ping. The deed appeared to be signed by Mr. MCKINNEY and witnessed and notarized by Jack Exles on April 23, 2005.

24. Bank of America records show that on April 25, 2005 – just two days after the sale of the Hanna Place property, a deposit of $20,000 in the form of a cashier's check was made into the Brotherhood of Men, Inc., account number 001922787468, and endorsed by Mr. MCKINNEY. Ping Chen, who was deeded the Hanna Place property from the Brotherhood of Men, Inc., on April 23, 2005, was the remitter on the cashier's check. (Therefore, it can be inferred that Chen Ping purchased the Hanna Place property from Mr. MCKINNEY for the sum of $20,000).

### 3rd Street Transactions

25. I and other agents conducted an investigation of the true ownership of the 3rd Street property. Through our investigation, we discovered that on July 6, 2004, a deed was filed with the District of Columbia's Recorder of Deeds office allegedly conveying ownership of the 3rd Street property from an individual named Ronald Washington to the Brotherhood of Men, Inc. The deed was witnessed with what appears to the affiant to be Mr. MCKINNEY's signature and the deed appears to have been notarized, on July 6, 2004, by Joe D. Liles, Sr. Mr. Liles is the same notary public as on the Hanna Place conveyance described above.

26. I discovered that among the items found in Mr. MCKINNEY's BMW at the time of his arrest on June 16, 2005: (1) was a photograph of the 3rd Street property; (2) notices and bills concerning the 3rd Street property addressed to Ronald Washington, including notices from various District of Columbia agencies regarding delinquent water/sewer charges, property tax bills, and other expenses pertaining to the 3rd Street property; and (3) receipts from cashier's checks from the Bank of America used to pay the District of Columbia's real property tax bills for the 3rd Street property.

27. Further investigation revealed that Ronald Washington was deceased on July 6, 2004,

when, according to the deed filed with the District of Columbia's Recorder of Deeds on July 6, 2004, Ronald Washington signed a deed conveying the 3rd Street property to the Brotherhood of Men, Inc. A review of Social Security records and other information indicated that the Ronald Washington died on February 11, 1997.

### LAUNDERING AND DISPOSITION OF PROCEEDS OF SCHEME TO DEFRAUD

28. During our investigation into the 3rd Street property transaction, I and other agents discovered that on June 16, 2005, Cosmopolitan Real Estate Settlement, Inc., of Silver Spring, Maryland, caused $295,328.38 to be wired from its account at the Columbia Bank, located in Maryland, to the Bank of America account number XXXXXXXX7468 in the District of Columbia, which is the Brotherhood of Men's account for which Mr. MCKINNEY is the sole approved signatory. On June 20, 2005, Mr. MCKINNEY withdrew $290,000 from the same account via a single cashier's check payable to him.

29. On July 8, 2005, Ralph Bernardo, President of Cosmopolitan Real Estate Settlement Group, said that the $295,328.38 wire to the Brotherhood of Men, Inc., bank account was part of a real estate settlement. Mr. Bernardo produced a settlement sheet indicating that the money was transferred to the Brotherhood of Men, Inc., account as part of the settlement of the sale of the 3rd Street property.

30. The settlement sheet produced by Mr. Bernardo for the 3rd Street property listed the seller as The Brotherhood of Men, Inc., and the purchaser as an entity named 1612 7th, N.W. LP.

31. Further investigation and review of records revealed that: (1) on June 2, 2005, Mr. MCKINNEY purchased a 2002 BMW for the sum of $47,195 and paid for the car with cash and two cashier's checks drawn on Bank of America account number XXXXXXXX7468; (2) on July

2, 2005, Mr. MCKINNEY purchased a Black 2000 Mercedes Benz (VIN number WDBNG70JYA046779) from Best Auto Sales in Arlington, Virginia, and subsequently paid $28,895 for the Black 2000 Mercedes with a cashier's check in the amount of $25,000 drawn on the Bank of America account and $3,952.40 in cash.  Mr. MCKINNEY had withdrawn $34,000 from the Bank of America account, which he used to purchase the cashier's check payable to Best Auto Sales and to obtain $9,000 in cash.

      32.  Further investigation revealed that a quiet title action styled *Estate of Elsie L. Robinson v. The Brotherhood of Men, Inc.* (*and Duane McKinney*), was filed in the Superior Court for the District of Columbia (Case No. 2004 CA6556).  At issue in that case, was a deed purportedly conveying ownership of real property to the Brotherhood of Men, Inc., from two brothers, one of whom was deceased at the time of the conveyance.  Mr. MCKINNEY had witnessed the forged deed and the deed was returned to Duane McKinney, 266 Harry Truman Drive, Largo, Maryland 20774.  In a Consent Order, dated January 28, 2005, the Court declared the deed *void ab initio*.  The Consent Order also states that Mr. MCKINNEY, as the President of the Brotherhood of Men, Inc., had acknowledged, in open court, that the deed was not signed by the grantors.

      33.  I submit that the evidence obtained during this investigation shows probable cause to believe that the properties at 4265 Edson Place, N.E., 5021 Hanna Place, N.E., and 1927 3rd Street, N.E. were all transferred to the Brotherhood of Men using forged deeds (in a scheme to defraud the true owners) involving Duane MCKINNEY and that the proceeds of the subsequent sale of those properties – including the $295,328.38 wired to the Bank of America account were the proceeds of fraud.  I submit that these proceeds, and all properties derived from them, are subject to seizure and forfeiture under 18 U.S.C. Section 981(a)(1)© as proceeds traceable to a

scheme to defraud and involving the use of a wire transmission (wire fraud, a specified unlawful activity).

34. I also submit that the Black 2000, 4-Door Mercedes-Benz Sedan (VIN number WDBNG70J4YA046776) was purchased with funds withdrawn from Bank of America account number XXXXXXXX7468, in violation of the federal anti-money laundering statutes, 18 U.S.C., Sections 1956 and 1957, and that the vehicle is therefore also subject to seizure for forfeiture under Title 18 U.S.C., Section 981(a)(1)(A).

35. I hereby request that a seizure warrant as authorized under Title 18 U.S.C., Section 981(a)(1)(A) be issued to seize the Black 2000, 4-Door Mercedes-Benz Sedan (VIN number WDBNG70J4YA046776).

_____
RONALD D. WILLIAMS
Special Agent, IRS CID

Subscribed and sworn to before me this _____ day of March 2006.

_____
UNITED STATES MAGISTRATE JUDGE